FITCHBURG RAILROAD *v.* CHARLES B. PRESCOTT & AL.

For purposes of taxation, wood, timber, logs and lumber, owned by a railroad corporation and distributed along its line for present use in operating and repairing such road, is to be deemed a part of the railroad, and subject to be taxed in that form by the justices of the Supreme Judicial Court.

And, therefore, such articles cannot be lawfully taxed in the towns where they may happen to be, although exceeding in value the sum of fifty dollars.

TRESPASS *de bonis.* The following facts are agreed for the purposes of this case :

The plaintiffs are, and for several years have been, a railroad corporation duly organized under the laws of this State, owning and operating therein, in connection with the residue of what was formerly the Peterborough and Shirley railroad, about ten miles of railroad extending from Mason Village to the State line. This piece of road is operated only in connection with and as part of a line extending from Mason Village to Groton Junction, the whole of which is owned and operated by the plaintiffs, and.was so in 1865. The defendants were selectmen of Mason in the political year 1865-6, and as such, on or about the first day of April, 1865, through one of their number called upon the plaintiffs' servant, L. J. Spalding, then acting as road-master of plaintiffs' said road, for an account of the personal property of the plaintiffs in Mason liable to be taxed there. Said Spalding, having no authority on that subject and disclaiming all knowledge of what personal property of the plaintiffs was liable to taxation in Mason, gave to the defendants a statement of all the wood, sleepers and logs of the plaintiffs situated in said Mason at that time. This property had all been purchased by the plaintiffs for the express purpose of operating and repairing their said railroad therewith, and was subsequently used by them for that purpose and no other.

Upon the property thus described to them by said Spalding, the defendants assessed against the plaintiffs a tax of $115.82, assessing it at the same rate in proportion to their valuation thereof as other personal property in town, and committed the said tax for collection to James Taft, the collector of Mason. Said Taft, on the twenty-third day of February, 1866, by virtue of the defendants' warrant, seized the wood in the plaintiffs' declaration mentioned, for non-payment of said tax, and advertised the same for sale on the 28th day of February, 1866. Thereupon the plaintiffs, on said 28th day of February, paid said Taft under protest, said tax of $115.82, and costs of the distress taxed at $3.71, amounting in all to $119.53.

The property on which said tax was assessed was not taxed to the plaintiffs elsewhere than in said Mason as personal property disconnected from their railroad, nor was it taxed to any one else than the plaintiffs in said Mason. The plaintiffs claim that said property being on hand for the sole purpose of operating and repairing their road, and having been used for that purpose was only taxable as part of their road, the same as the sleepers in the track, the bridges, cars and engines used in operating the same.

If, in the opinion of the court, said tax, upon the foregoing statement of facts, was legal, judgment is to be rendered for the defendants for their costs.   If otherwise, judgment is to be rendered for the plaintiffs for the costs of distress, $3.71, and such portion of the tax as may be holden illegal, with interest from February 28, 1866, and costs of suit.

It is, however, further agreed, that either party shall have the right to try any question of fact by the jury that may be deemed material, without prejudice from anything contained in the foregoing agreement.

*A. & F. A. Fowler*, for plaintiffs.

The case finds that the wood, sleepers and logs, upon which the tax in controversy was assessed to the plaintiffs by the defendants, had been purchased and were holden by the plaintiffs for the express purpose of operating and repairing their railroad therewith, and were subsequently used by them for that purpose and no other.   Hence the only question to be decided is, whether a railroad in operation is legally taxable for the wood, sleepers and lumber it may have on hand on the first day of April for the purpose of running and repairing its road, as personal property distinct from the corporation, in the several towns where such wood, sleepers and lumber may happen to be found?

We submit it is not; and that the tax assessed by the defendants against the plaintiffs, under the circumstances set forth in the agreed case, was wholly unauthorized and illegal.

I.   The wood, sleepers and lumber in question having been purchased and being holden as they were for the sole and express purpose of operating and repairing the plaintiffs' railroad, had become annexed to and constituted a part of that road by destination and accession within the established decisions of the common law, as well as within the spirit and scope of the statute for the taxation of railroads, and were no more taxable as personal property, distinct from the corporation itself, than its engines and cars, and the sleepers and iron in its track.   *Lassell* v. *Reed*, 6 Greenl. 222 ; *Kittredge* v. *Woods*, 3 N. H. 503 ; *Conner* v. *Coffin*, 22 N. H. 542 ; *Daniels* v. *Pond*, 21 Pick. 327 ; *Middlebrook* v. *Corwin*, 15 Wendell 169 ; *Parsons* v. *Camp*, 11 Conn. 525 ; *Ripley* v. *Paige*, 12 Vt. 353 ; *Walker* v. *Sherman*, 20 Wendell 639 ; *Goodrich* v. *Jones*, 2 Hill 142 ; *Sawyer* v. *Twiss*, 26 N. H. 346 ; *Farrar* v. *Stackpole*, 6 Greenl. 157 ; *Fuller* v. *Walter*, 28 Me. 545 ; Hare and Wallace's notes to *Elwes* v. *Mawe*, 2 Smith's Leading Cases 196, 215-221 ; *Snedecker* v. *Warring*, 2 Kernan 170 ; *Wadleigh* v. *Janvrin*, 41 N. H. 503, and numerous authorities there cited ; *Pierce* v. *Emery*, 32 N. H. 484.

II.   Even if the wood, sleepers and lumber had not become part of the road by destination and accession, as we submit they most clearly had, still they were not taxable to the corporation as personal property.   The statute provides for the taxation of the corporate property of railroads in a specified mode, by the justices of the Supreme Judicial Court,

and no property of any railroad, real or personal, is taxable to the corporation in any other way, except it be "real estate" *not* "used for their road and other ordinary and usual purposes of the corporation," or "for which they have not expended any part of their capital stock" so that it can properly be included in the taxation by the justices. Compiled Statutes, 113, 114. The statute provision for taxing the whole corporate property in a particular mode, obviously excludes any other taxation not expressly provided for; and the express provision for taxing real estate otherwise under certain circumstances, clearly excludes the idea of taxing any thing else than such real estate otherwise than by the justices. *Expressio unius est exclusio alterius.* Broom's Legal Maxims, 515; *Gregory* v. *Des Anges*, 3 Bingham's N. C. 85; *Atkinson* v. *Fell*, 5 Maule & Selwyn, 240; *Cates* v. *Knight*, 3 D. & E. 442, 444; *Alban* v. *Pyke*, 5 Scott N. R. 245; *Rex* v. *North Nibley*, 5 D. & E. 21; *Newton* v. *Holford*, 6 Queen's Bench, 926; *Rex* v. *Woodland*, 2 East. 166; *Rex* v. *Bell*, 7 D. & E. 600; *Rex* v. *Cunningham*, 5 East 478; *Governor*, &c. v. *Richardson*, 3 Burrows 1344; *Dewhurst* v. *Fielden*, 8 Scott N. R. 1013, 1017; 2 Dwarr. Stats. 712, 713; *State* v. *Ferguson*, 33 N. H. 424.

III. The injustice and unreasonableness of subjecting the materials holden by a railroad, essential to the performance of its duty to the public, to a separate tax, independent of the general tax to which the whole corporate property is liable, show clearly the absurdity and illegality of the tax in question.

Fuel to create motive power, sleepers to keep the track in proper condition, and lumber to repair the bridges and crossings, are just as essential to the effective operation of a railroad, just as indispensable to enable it to discharge its duties to the public, as its engines and cars, the rails and sleepers already in its track, and the lumber already constituting its bridges and crossings; for the railroad could not be run a day or an hour without them. From the nature of the case, these articles must be procured in advance and be kept on hand while they are manufactured and become seasoned and fit for actual use. They are purchased with the capital of the road, and are used only for its ordinary and necessary purposes. There would be the same propriety in taxing a railroad for its engines and cars, without which it could do nothing whatever; for the rails, sleepers and chairs composing its track, without which the engines and cars could not be moved; or for the money on hand with which to pay the daily wages of its employees, as for the wood to run its trains, the sleepers to renew its track, and the lumber to repair its bridges and crossings; for the former are no more indispensable to its operations, no more essential to enable it to discharge its duties successfully as a common carrier of passengers and freight, than the latter; and the one class of articles is just as inseparable from the aggregate corporate property as the other.

The entire corporate property, with the exception of certain real estate, is by law required to be taxed by the justices in a particular mode and at a particular rate. If the towns can tax the wood, sleepers and

lumber, they might also tax the engines, cars, rails, money on hand, and whatever else they chose to separate from the bulk of the corporate property, in a different mode and at a different rate. Thus the manifest intent of the law would be defeated, and the railroad be compelled to submit to as many different rates of taxation, and to the caprice of as many different boards of assessors, as there should happen to be towns in which property of the corporation might be found on the first day of April, besides being subjected almost inevitably to excessive and double taxation.

*Morrison, Stanley & Clark*, for defendants.

The only question arising in this case is, whether the tax in question was properly assessed.

Chapter 2351 of Pamphlet Laws, page 2254, section 1, provides that all "wood, bark, timber, logs and lumber manufactured or otherwise, shall be taxed for its full value to the owner or owners thereof, in the town or towns where the same shall be on the first day of April in each year, if such owner or owners shall then reside in such town, otherwise to the person or persons having the same in their care or custody on the day aforesaid. And any person or corporation which shall permit wood, bark, timber, logs and lumber to be laid on its premises shall be deemed to have the same in its custody for the purposes aforesaid," &c. By section third of the same chapter certain acts therein specified, and all acts and parts of acts inconsistent with this act are repealed.

The provision of the law, under which it is claimed this property in question was exempted from taxation, is as follows : "Every railroad corporation shall pay to the treasurer of the State on or before the first Wednesday of September annually one per cent. on the value on the first day of January preceding, of that part of its capital stock expended within this State," &c. Compiled Statutes, sec. 4, 113 ; Laws of 1843, chap. 43, sec. 3 and 4. The particular property liable to be taxed, the mode of assessing and collecting such taxes, is fixed by the statute.

Under section 4 of the Compiled Statutes, therefore, only the capital stock of railroad corporations within this State could be taxed, and until the passage of chapter 991 of the Pamphlet Laws, Compiled Statutes, section 8, page 116, nothing else but their capital could be taxed ; but the provisions of that chapter are plain and explicit. It makes no distinction whatever whether timber, wood and lumber is owned by a person or a corporation, and no distinction between a railroad and a manufacturing corporation. It provides that all such property shall be taxed to its owner on the first day of April in each year at its full value.

It was clearly the intention of the legislature, by the act of 1850, by the act of June, 1858, chapter 2121, Pamphlet Laws, page 2018, and by chapter 2351, before cited, to subject this kind of property, which before this time had escaped it, to the burdens of taxation.

It cannot be claimed that the wood, lumber, timber and logs, which the plaintiffs had on hand on the first day of April, 1865, was pur-

chased with a part of their capital, or that a part of their capital was invested in it.   It was purchased from the earnings of their railroad for the purpose of its repair and operation, and the expenses incurred in its purchase were part of the necessary running expenses.

But even if it was purchased with part of the capital stock, it cannot avail, because the provisions of chapter 2351 are inconsistent with section 4 of the Compiled Statutes, before cited, and operates in so far as a repeal and modification of the provisions of that section.

The arguments of the plaintiffs as to the injustice and unreasonableness of subjecting this kind of property to taxation apply with equal force to the case of a farmer who has on hand more than fifty dollars worth of lumber which he has purchased for the purpose of repairing his buildings or making fences on his farm, and yet it will not be claimed that such property would be exempt from taxation.   There is the same reason for exempting the horses and coaches employed in carrying the mail, on account of their duty to the public, as in exempting the property in question, because it is used in repairing a railroad which is a public accommodation.

It is a sufficient answer to all these arguments to say that the legislature in their wisdom have enacted a law subjecting it to the burdens of taxation.   There may be very strong reasons why property now exempt should be taxed, and why property now taxed should be exempt, but as we have seen, the subject is one of legislative enactment entirely, and the terms of the statute must be strictly followed.

BELLOWS, J.   The question here is, whether the law which subjects wood, timber, logs and lumber exceeding fifty dollars in value, to taxation, applies where the articles are owned by a railroad corporation and distributed along its line for present use in operating and repairing such road.   By the law of July 4, 1860, ch. 2351, such property is made subject to be taxed in the town where it shall be on the first day of April, to the owner if he reside in that town, otherwise to the person having the care and custody thereof; and by the act of July 1, 1863, ch. 2736, which is amendatory ot the former act, it is provided that such wood, bark, timber, logs and lumber, manufactured or otherwise, on its way to market, on the first day of April, or temporarily delayed on its way to market, shall be taxed to the owner in the town where he resides, if he reside in this State.

The purpose of this legislation was apparently to reach this description of property when held by the owner in considerable quantities for sale, leaving untaxed the fuel and lumber provided for immediate use, which, it was supposed, would not exceed fifty dollars in value.   If the quantity exceed that sum, in any instance, it would however be liable to be taxed, even though it was designed for immediate use.

The quantity in this case exceeded that amount, and therefore was liable to be taxed, though provided for present use, unless it be regarded as part of the railroad and taxable in that form.

By the Revised Statutes, ch. 39, sec. 4, every railroad corporation is to be taxed one per cent. on the value, on the first day of January, of

that part of its capital stock expended within this State, to be determined by the certificate of the justices of the Superior Court."

By law of July 1, 1843, ch. 34, sec. 4, (C. S. ch. 41, sec. 4,) it is enacted that the tax shall be assessed in proportion as near as may be, to the taxation of other property in the several towns in which said railroads are situate.

Under these laws railroads are assessed by the justices of the Supreme Court upon the value of their capital stock on the first day of April in each year, which was expended in this State; and the question is, whether the wood and lumber distributed along the various railroad lines and designed for immediate use is for this purpose to be deemed a part of the railroad, and so included in the assessments of those corporations.

In determining the value of such capital stock various circumstances are taken into account, such as the amount originally expended, the business done, the dividends made, and the market value as indicated by the sales of shares.  In most cases the best evidence to be had of the value of such stock is the market price at the brokers' board.  In some cases it may properly be quite decisive; in other cases there are either no sales at all or in consequence of debts owing by the corporation they are merely nominal.  But in all cases in determining the value, the entire railroad including the franchise, the track, land, buildings and fixtures, and also the rolling stock, tools and whatever is necessary to the complete equipment of the road should be taken into the estimate, and among them must be included, we think, the fuel and timber provided for immediate use.  If the present value of the capital stock may properly be determined by the market price it bears, or if that may be considered as an important element in fixing such value—and of this we have no doubt—then it is quite clear, we think, that such wood and timber must enter into, and be included in, the value of the stock, and must, therefore, in that form, be taxed as part of the railroad.

Such is the settled practice of the justices of this court in assessing the railroads; and so we understand it has been for a long time.  A stock of wood and sleepers and other lumber is, of course, indispensable for the operation of the road; in many instances even, in this State, this stock is and ought to be large; sometimes reaching in value $60,000 or $70,000; and it could not but affect materially the price of the shares.  In some cases the quantity of wood alone, consumed by a single railroad, rises as high as ten or twelve thousand cords, and it is perfectly obvious that if none was provided and on hand, the price of shares would be materially diminished.

From these considerations it is apparent that the wood and lumber provided by railroads for present use, are already taxed as part of the railroads, and if properly so taxed, it must be decisive of the question before us.

Upon the point whether these materials are properly so taxed, the long and settled practice of the court might well be considered as conclusive.  Indeed, such materials, as well as the rolling stock, tools and the like, may well be deemed, for the purposes of taxation, a part of the railroad itself.  In respect to the locomotives, cars, tools and the

like, it is unquestionably so, although in their nature personal property ; and still they go to swell the value of the capital stock for the purposes of assessment, and in that form are taxed.    In *Pierce* v. *Emery & al.*, 32 N. H. 484, it was decided that where there was a mortgage of a railroad and its franchise, subsequently acquired property, both real and personal, immediately upon its vesting in the corporation, would, as incident, and by accession, become part of the thing originally mortgaged, and of the mortgage security ; and therefore it was held that iron purchased by the corporation after such mortgage, and laid down upon the track, vested in the mortgagees, although it was agreed that persons who had paid the duties for which the United States had a lien upon the iron, should still have a lien on it and be authorized to take it up, until those duties were paid, unless the arrangement was made with the knowledge and assent of the mortgagees.    A similar doctrine was held in respect to after-acquired real estate in *Willock* v. *The Morris Canal Co.*, 3 Green Ch. Rep. (N. J.) 377..

Upon these views we see no objection to regarding such wood and lumber for the, purpose of taxation, as part of the railroad itself, as has been heretofore practiced, the same, indeed, as the rolling stock.    This accords too, we think, with the policy of our legislature on this subject.

By the law of Dec. 27, 1844, ch. 141, it is enacted "that all real estate owned by any railroad corporation, except such as is used for their road and other ordinary and usual purposes of the corporation, and all real estate owned and occupied by such corporation, for their road, for which they have not expended any part of their capital stock in such manner as that the several towns through which such roads pass receive one fourth of one per cent. according to the provisions of chapter thirty-nine of the Revised Statutes, shall be appraised and taxed in the several towns where the same may be located, in the same way as is by law provided for appraising and taxing real estate."

In accordance with these provisions, real estate not used for the ordinary and usual purposes of the railroad, is taxed in the towns where it is situated, and the value deducted from the entire value as determined by the justices of the Supreme Judicial Court in the manner before stated.    Independent of these provisions in the law of Dec., 1844, all such real estate for which the capital of the corporation had been expended, must have been taxed with the railroad itself; and as no similar provision was made for taxing wood and lumber in the towns where they happened to be, although they stood in relation to the railroad upon much the same footing as such real estate, it may fairly be inferred that there was no purpose to tax them otherwise than as part of the railroad.

It may be urged that the wood and lumber assessed in the case before us was not purchased with the capital expended, within the meaning of the law for taxing railroads, but with the earnings of the road.    If this be true, as it undoubtedly is, still if the original stock on hand when the road went into operation was purchased with such capital, and that which has since been purchased went to supply the place of the first stock, we think it might well be regarded as standing in its place in re-

spect to taxation in the same way as do the new rails and sleepers when laid down, and the new engines and cars.

Whether the first stock of wood and lumber was in fact purchased with any part of the capital does not appear in this case, and how it generally has been in other cases, we are not informed. It seems, however, quite probable that it has not been uniform; and the same may be said in respect to the rolling stock and other things belonging to the equipment of the road, and even in respect to the iron and other things pertaining to the superstructure. Indeed, in many instances the means obtained by the sale of shares has been wholly insufficient to construct and equip the road, leaving much to be done upon credit, or by money obtained by creating a debt, funded or floating, to be paid off by the future earnings of the road.

Still, although the superstructure and the rolling stock may have been paid for, ultimately, from the earnings of the road, we have no doubt that it must be regarded as in the nature of an expenditure of capital within the meaning of the law. These things are essential to the construction of the road, without which it cannot be put in operation, and whether the money by which they are paid for, be obtained by a sale of shares, or of bonds of the corporation, or even by means of a floating debt, it is equally an expenditure of capital within the meaning of the act.

As it is with the superstructure and rolling stock, so it is with the stock of fuel and lumber necessary for immediate use. It is apparent that for the complete equipment of the road such stock is as necessary as the engines and cars, or the machinery by which such fuel is prepared for use, and ordinary prudence would require that a stock equal to a year's supply should be provided. This might properly be paid for out of the capital; otherwise it must be obtained on credit. If the first year's stock be paid for out of the capital, the next year's supply would naturally be obtained by the earnings of the road.

How the expenditures for the first year's stock of fuel and lumber have been treated in making up the construction accounts of the various railroads we have not the means of knowing, but are inclined to think it has not been uniform. But however this may be, we are of the opinion that, although it may be difficult to determine how these expenditures have been treated in making up these construction accounts, or even how they should be treated if the question were an open one, the practice of treating such wood and lumber as part of the railroad for the purposes of taxation, has been so uniform and so long continued, that it should not now be disturbed.

That such wood and lumber were so taxed at the time of the assessment in question by the selectmen of Mason, is unquestionable; that one of the assessments is wrong is equally clear: and, in view of the long and uninterrupted practice to tax them as part of the railroad, and the absence of any proof of a general practice to tax them in the towns, we must hold the assessment in question to be illegal.

But it is urged by the defendants' counsel, that even if the wood and lumber had been purchased with part of the capital stock it would avail

nothing, because the provisions of the law of July 4, 1860, ch. 2351, are inconsistent with the Revised Statutes, ch. 39, sec. 4, and in effect modify it in respect to the point in question. It must be remembered however, that by the law of 1846, ch. 332, (C. S. ch. 41, sec. 3,) wood and lumber were especially made liable to assessment, and so it has been ever since with various modifications; and yet the practice of including it by the justices in the appraised value of the railroad has continued without interruption to the present time.

Nor do we think there is anything in the laws subjecting wood and lumber and other things of that description to taxation, from which a modification of the law in respect to the taxation of railroads can be implied. In the Revised Statutes the same chapter that provides for the taxation of railroads, provides that all carriages exceeding fifty dollars in value shall be taxed, and yet so far as we know, it has never been contended that railroad cars were subject to be taxed under this provision, although they might well be deemed to be carriages.

In fact the only convenient mode of taxing the property belonging to railroad corporations is the one adopted by the justices; to include all that goes to constitute the railroad, whether it be movable or immovable; and this, we think, was in accordance with the legislative policy; and we can see no purpose to change it in the law providing in general terms for the taxation of wood and lumber to the owners; and these views are in accordance with the doctrine of *Smith* v. *Bailey*, 9 N. H. 423.

There must, therefore, be judgment for the plaintiffs for the amount so assessed and paid, with the costs as agreed, unless a trial by jury shall be elected.